# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BRIAN MOAT, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:21-cv-00807 |
| ) | |
| v. ) | JUDGE TRAUGER |
| ) | |
| METROPOLITAN GOVERNMENT ) | JURY DEMAND |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff Brian Moat respectfully submits the following proposed jury instructions.

## SUBSTANTIVE LAW

This case is brought by the Plaintiff, Brian Moat, under federal laws that protect disabled employees in the workplace.[1] Mr. Moat alleges the Defendant, the Metropolitan Government of Nashville and Davidson County, Tennessee, or "Metro," violated the Americans with Disabilities Act.[2] This law is commonly called the "ADA." The purpose of the ADA is to ensure that individuals living with disabilities are treated fairly and afforded equal opportunities, including within the workplace.[3]

The ADA requires employers to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.[4] In this case, Mr. Moat claims that Metro failed to reasonably accommodate his disability, in violation of the ADA.[5] Once an employee requests an accommodation for their disability, the ADA also requires employers to engage in an interactive process to identify potential reasonable accommodations for the employee.[6] This interactive process is mandatory, and both parties have a duty to participate in good faith.[7] In this case, Mr. Moat also claims that after he requested a reasonable accommodation, Metro failed to engage in the interactive process in violation of the ADA.[8]

---

[1] Joint Proposed Pretrial Order (ECF No. 42).
[2] *Id.*
[3] 42 U.S.C. § 12101; *Evola v. City of Franklin, Tenn.*, 18 F. Supp. 3d 935, 944 (M.D. Tenn. 2014).
[4] 42 U.S.C. § 12112(b)(5).
[5] Joint Proposed Pretrial Order, (ECF No. 42).
[6] *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).
[7] *Lafata v. Church of Christ Home for the Aged*, 325 Fed. App'x 416, 422 (6th Cir. 2009).
[8] Joint Proposed Pretrial Order (ECF No. 42).

## ELEMENTS OF A REASONABLE ACCOMMODATION CLAIM

The ADA requires an employer to make reasonable accommodations for an employee's disability.[9] In this case, Mr. Moat claims that Metro failed to reasonably accommodate his disability, in violation of the ADA.[10]

To succeed in this case, Mr. Moat must prove each of the following by a preponderance of the evidence:

1. As a result of his back injury, Mr. Moat had a "disability," as defined by the ADA.[11] Metro does not dispute this element.[12]

2. Mr. Moat was otherwise qualified for his position as a firefighter, despite his disability.[13] This means Mr. Moat could have performed the essential functions of his job as firefighter with a proposed reasonable accommodation.[14]

---

[9] 42 U.S.C. § 12112(b)(5).
[10] Joint Proposed Pretrial Order (ECF No. 42).
[11] *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019).
[12] Joint Stipulations for Trial (ECF No. 41).
[13] 29 C.F.R. § 1630.2(m).
[14] *Id.*; *Morrissey*, 946 F.3d at 298.

## **"DISABILITY" DEFINED**

Under the ADA, the term "disability" means a physical or mental impairment that substantially limits one or more major life activities.[15] An individual can be "disabled" under the ADA even if their impairment is not a life-long or permanent impairment.[16] In this case, Metro does not dispute that Mr. Moat was disabled when he requested a reasonable accommodation.[17]

---

[15] 42 U.S.C. § 12102(1).
[16] 29 C.F.R. § 1630.2(j).
[17] Joint Stipulations for Trial (ECF No. 41).

## **"QUALIFIED INDIVIDUAL" DEFINED**

To be a "qualified individual" under the ADA, Mr. Moat must meet the following criteria:

1. He must possess the requisite skill, education, experience, and other job-related requirements for his position; and

2. He must be able to perform the essential functions of his job, either with a reasonable accommodation or without a reasonable accommodation. [18]

In assessing whether Mr. Moat was qualified to perform the essential functions of his job, you should not consider Mr. Moat's abilities at the time of the denial of his request for a reasonable accommodation. Instead, you should consider Mr. Moat's abilities *with* a reasonable accommodation—in other words, his abilities *after* any extended Injury-on-Duty Leave and/or temporary light duty assignment would have ended.[19]

---

[18] 29 C.F.R. § 1630.2(m).
[19] *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1229 (6th Cir. 2022).

## "REASONABLE ACCOMMODATION" DEFINED

Under the ADA, the term "reasonable accommodation" means making modifications or adjustments to the workplace that allow a person with a disability to perform the essential functions of their job or allow a person with a disability to enjoy the same benefits and privileges of employment that are available to any person without a disability.[20] The ADA requires employers to make reasonable accommodations.[21] Examples of reasonable accommodations include, but are not limited to: job restructuring; part-time or modified work schedules; reassignment to a vacant position; or similar accommodations for individuals with disabilities.[22] Additional medical leave can also constitute a reasonable accommodation.[23]

If an employee requests reassignment to another position as a reasonable accommodation, an employer has a duty under the ADA to determine if the employer has a job that the employee might be able to fill.[24] Specifically, an employer must take three steps: (1) identify the full range of alternative positions for which the employee satisfies the employer's legitimate, nondiscriminatory prerequisites; (2) determine whether the employee's own knowledge, skills, and abilities would enable him to perform the essential functions of any of those alternative positions, with or without reasonable accommodations; and (3) consider transferring the employee to any of those other jobs, including those that would be considered a demotion.[25] Please note that an employee's request does not need to use magic words such as "accommodation" or "disability."[26]

---

[20] 29 C.F.R. § 1630.2(o).
[21] *Blanchet v. Charter Communications, LLC*, 27 F.3d 1221, 1229 (6th Cir. 2022) (quoting 42 U.S.C. § 12112(b)(5)(A)).
[22] 42 U.S.C. § 12111(9).
[23] *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560-61 (6th Cir. 2022).
[24] *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 419 (6th Cir. 2020).
[25] *Id.* at 420.
[26] *Id.* at 419.

If an employer places an employee on an involuntary leave, despite their ability to perform a temporary position, you may find that the employer's actions were unreasonable.[27]

---

[27] *Kiphart v. Saturn Corp.*, 251 F.3d 573, 587 (6th Cir. 2001); *cf. Mosby-Meachem v. Memphis Light, Gas, & Water Div.*, 883 F.3d 595, 605-06 (6th Cir. 2018).

## DUTY TO ENGAGE IN THE INTERACTIVE PROCESS

Once an employee with a disability requests a reasonable accommodation, the ADA requires that the employer initiate an informal, interactive process with the employee who requests the accommodation.[28] During this interactive process, the employer has a duty to explore the nature of the employee's limitations, if and how those limitations affect their work, and what types of accommodations can be made.[29] In engaging in this interactive process, the employer must make an individualized inquiry to determine whether a reasonable accommodation can be made.[30] The interactive process is mandatory, and both parties have a duty to participate in good faith.[31] An employer who determines what accommodation it is willing to offer before ever speaking with an employee does not participate in good faith.[32]

An employer's obligation to engage in the interactive process is ongoing.[33] An employee may need a different accommodation than they originally request; in that case, the employer continues to be required to engage in the mandatory good-faith participation in the interactive process.[34]

If an employer fails to engage, or fails to continue to engage, in the interactive process after an employee requests a reasonable accommodation, the employer has violated the ADA.[35]

---

[28] 29 C.F.R. § 1630.2(o)(3).
[29] *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 434 (6th Cir. 2018) (citing 29 C.F.R. § 1630.2(o)(3)).
[30] *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).
[31] *Lafata v. Church of Christ Home for the Aged*, 325 Fed. App'x 416, 422 (6th Cir. 2009).
[32] *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 419, 421 (6th Cir. 2020).
[33] *Id.* at 421-22 (6th Cir. 2020)); *see also* EEOC Enforcement Guidance on Reasonable Accommodation § 32, *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.
[34] *Fisher*, 951 F.3d at 421-22; *see also Humphrey v. Memorial Hospitals Ass'n*, 239, F.3d 112, 1138 (9th Cir. 2001)).
[35] *Mosby-Meachem v. Memphis Light, Gas, & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018); *Fisher*, 951 F.3d at 421-22.

## **DAMAGES GENERALLY**

If you find that Metro violated Mr. Moat's rights under the ADA, then you must determine the amount of damages that Metro's actions have caused Mr. Moat. Mr. Moat has the burden of proving damages by a preponderance of the evidence.[36]

---

[36] Third Circuit Model Jury Instructions, 9.4.3 (May 2016).

# BACK PAY

If you find in favor of Mr. Moat, you must award as actual damages an amount that reasonably compensates him for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that he would have received had the unlawful conduct not occurred. Basically, you should make Mr. Moat whole for any wages or other benefits that he has lost as a result of Metro's unlawful conduct.

Back pay damages, if any, apply from the time Mr. Moat's request for a reasonable accommodation was denied until the date of your verdict. [37]

---

[37] American Bar Association, *Model Jury Instructions: Employment Litigation* § 1.07[2] (2d ed. 2005); Third Circuit Model Jury Instructions, 9.4.3 (May 2016).

# AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES

Metro has raised the defense that Mr. Moat had a duty to make reasonable efforts to obtain other employment in order to mitigate his damages. In attempting to mitigate damages, Mr. Moat is not required to accept any offer of employment, or abandon his home or place of residence to seek other employment, but is only required to exercise reasonable diligence in seeking other employment of a similar or comparable nature.

Metro has the burden of establishing that Mr. Moat failed to use reasonable diligence in mitigating damages. Metro must prove both the availability of substantially equivalent substitute employment, and Mr. Moat's lack of reasonable diligence in seeking such positions. Metro must establish that equivalent positions were available with virtually identical promotional opportunities, compensation and benefits, job responsibilities, working conditions, and status.[38]

---

[38] *Killian v. Yorozu Auto., Tenn., Inc.*, 454 F.3d 549, 557 (6th Cir. 2006); *United States v. City of Warren*, 138 F.3d 1083, 1098 (6th Cir. 1998); *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 623-26 (6th Cir. 1983).

# **EMOTIONAL DISTRESS DAMAGES**

If you find that Metro violated Mr. Moat's rights under the ADA, then you must determine an amount that is fair compensation for his damages. You may award compensatory damages only for injuries that Mr. Moat proved were caused by Metro's alleged wrongful conduct. The damages that you award must be fair compensation—no more and no less. You may award damages for any emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life or other non-economic losses that Mr. Moat experienced as a consequence of Metro's violations of Mr. Moat's rights under the ADA.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

Medical or other expert evidence is not required to prove emotional distress. Mr. Moat's own testimony, along with the circumstances of his situation, can be sufficient to sustain his burden of proving that he should be awarded compensatory damages for emotional distress. In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that Mr. Moat prove the amount of his damages with mathematical precision, but only with as much definiteness and

accuracy as circumstances permit.[39]

---

[39] 42 U.S.C. § 1981a(b)(3); O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions – Civil,* Vol. 3 §§ 170.60 and 171.90 (5th ed. 2001) (modified).

## ADA DAMAGES – FRONT PAY

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Moat would reasonably receive had Metro not violated his rights under the ADA for the period from the date of your verdict through a reasonable period of time in the future. Mr. Moat has the burden of proving the damages by a preponderance of the evidence.[40]

---

[40] Third Circuit Model Jury Instructions, 9.4.4 (May 2016) (modified); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1361 (6th Cir. 1994).

## NOMINAL DAMAGES

If you return a verdict for Mr. Moat, but he has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.[41]

---

[41] Third Circuit Model Jury Instructions, 9.4.5 (May 2016).

Respectfully submitted,

**JESSE HARBISON LAW, PLLC**

*/s/ Jesse Ford Harbison*
Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, TN 37206
(615) 415-3285
jesse@jesseharbisonlaw.com

**STEINER & STEINER, LLC**

*/s/ Ann Buntin Steiner by JFH w/ permission*
Ann Buntin Steiner, BPR No. 11697
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
asteiner@steinerandsteiner.com

**HUNTER LAW FIRM PLC**

*/s/ Anne Bennett Hunter by JFH w/ permission*
Anne Bennett Hunter, BPR No. 022407
101 Creekside Crossing, Suite 1700-307
Brentwood, TN 37027
(615) 592-2977
anne@hunteremploymentlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2023, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows: J. Brooks Fox, Benjamin Puckett, Department of Law, Metropolitan Courthouse, Suite 108, P.O. Box 196300, Nashville, Tennessee 37219. Parties may access this filing through the Court's electronic filing system.

/s/ *Jesse Ford Harbison*
Jesse Ford Harbison