**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRIAN MOAT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:21-cv-00807** |
| | ) | |
| **v.** | ) | **JUDGE TRAUGER** |
| | ) | |
| **METROPOLITAN GOVERNMENT** | ) | **JURY DEMAND** |
| **OF NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**I.      Defendant did not engage in the interactive process.**

     In opposing Mr. Moat's Motion, Defendant focuses on the events occurring: (1) *prior* to

Mr. Moat's request for light duty;[1] and (2) *after* Defendant denied his request for light duty.[2] None

of these events are relevant, however, to Defendant's complete failure to engage in the interactive

process in the fifty-six minutes that elapsed between Mr. Moat's request for light duty and

Defendant's denial of that request.

---

[1] *See* Reply, ECF No. 82, at Page ID # 1980 (citing to Plaintiff's Exhibits 1, 2-5, 13-14, 21 and 25, all of which predate Mr. Moat's release to light duty and his request for a light duty assignment on June 18, 2020); *Id.* at Page ID # 1981 (discussing the June 9, 2020 Civil Service Meeting, which took place before Mr. Moat's release to light duty and request for a light duty assignment).

[2] *Id.* at Page ID # 1980 (citing to Exhibit 9, which contains only records related to medical treatment Mr. Moat received months after Defendant denied his request for light duty, and Exhibit 23, which is an email sent after Defendant denied Mr. Moat's request for light duty). Plaintiff notes that in footnote 3 of its Response, Defendant characterizes Exhibit 23 as a "further interaction" with Ms. Summers' office (Doc. No. 82 at Page ID # 1983); however, Michelle Smith sent that email after Ms. Summers denied Mr. Moat's request for light duty. *See* Pl.'s Tr. Ex. 23.

The only document Defendant cites that is related to its response to the request for light duty is Exhibit 19 (Ms. Summers' email denying Mr. Moat's request). As set forth in Plaintiff's Memorandum, in the fifty-six minutes that elapsed between Mr. Moat's request for light duty and Ms. Summers' response denying the request for light duty, Ms. Summers admitted she did not communicate with Mr. Moat, reach out to anyone regarding his request for light duty, forward Mr. Moat's email requesting light duty to anyone, or look for any available light duty positions. (Mem. of Law, ECF No. 68, at Page ID #1435-36). Defendant's Response makes no argument that Exhibit 19 somehow establishes that Defendant _did_ engage in the interactive process.

Metro also cites to Mr. Moat's June 15, 2020 application for an IOD Pension, which also predates Mr. Moat's June 18, 2020 release to light duty and request for a light duty assignment.[3] As stated in the jury instructions, "[a]n employee may need a different accommodation than he originally requests. In that event, the employer continues to be required to engage in the interactive process." (ECF No. 60 at Page ID # 1222). In other words, despite Mr. Moat's application for an IOD pension,[4] his request for light duty in light of his changed circumstances (_i.e._, his release to

---

[3] Ms. Summers testified that the IOD program is Defendant's version of workers' compensation. (Summers Testimony, ECF No. 65, at 13). The IOD pension program is codified in Defendant's Code. _See_ Metro Code § 3.28.040 ("A member who is covered for a disability pension, who becomes disabled . . . in the line of duty, shall be eligible to receive a disability pension . . . ."). The analogous benefit under the Tennessee Workers Compensation Act ("TWCA") are temporary total disability benefits, which replace a portion of an employee's income while an employee is temporarily unable to work. _See_ Tenn. Code Ann. § 50-6-207. Defendant is essentially advancing an argument that an employer who provides the income replacement required by the Metro Code or the TWCA do not need to engage in the interactive process under the ADA. This is inaccurate because the TWCA and the ADA each "serve[s] a different role and impose[s] a different legal standard." _Flynn v. Crossville Hous. Auth._, 2022 U.S. Dist. LEXIS 121721, at *8 (M.D. Tenn. July 11, 2022). Whether an employer provides workers' compensation benefits under the TWCA, or IOD benefits under the Metro Code, has no bearing on whether it engaged in the interactive process as required by the ADA. The employer is legally responsible for providing these benefits, regardless of whether any request for an accommodation is made.

[4] Defendant's Response omits the fact that Plaintiff applied for the IOD pension at Chief Moreland's direction as a belt-and-suspenders approach; specifically, Chief Moreland told

2

light duty) triggered Defendant's ongoing obligation to engage in the interactive process to: "(1) identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites; (2) determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations; and (3) consider transferring the employee to any of these other jobs, including those that would represent a demotion." *Fisher v. Nissan North America*, 951 F.3d 409, 420 (6th Cir. 2020) (internal citations omitted).

Defendant's arguments that Plaintiff cannot "examine a single interaction with Ms. Summers in a vacuum" and, incredibly, that the duty to engage in the interactive process "does not begin and end with each new back and forth" are incorrect as a matter of law. (Resp., ECF No. 82 at Page ID # 1980). In fact, the Sixth Circuit recently rejected arguments like Defendant's in *Fisher v. Nissan N. America, Inc.*, 951 F.3d 409 (6th Cir. 2020). In that case, the employer provided multiple accommodations to the plaintiff (including long-term disability leave and transfer to a different position) before the plaintiff asked for another transfer as a reasonable accommodation for his disability. *Id.* at 414-15. After the employer denied his request for another transfer, the plaintiff sued, asserting the employer failed to engage in the interactive process. *Id.* at 415, 421. The Court held that despite the employer's earlier attempts to accommodate the plaintiff (*i.e.*, the long-term leave and first transfer), plaintiff's subsequent request to be transferred to a different position triggered the employer's "continuing mandatory duty of good-faith participation in the interactive process." *Id.* at 422. Likewise, in this case, Defendant's actions before Mr. Moat's request for light duty (*e.g.*, the June 9, 2020 Civil Service Commission meeting, or recommending

---

Plaintiff to apply for the IOD pension at "Jamie [Summers'] suggest[ion] . . . *you can always withdraw this request*. This way the process is started and you have all the paperwork complete if you need it." Pl.'s Ex. 53 (emphasis added).

he apply for an IOD pension) do not negate Defendant's duty to engage in the interactive process that was triggered when Mr. Moat requested a light duty assignment.

## II.     The appropriate accommodation was not "obvious."

Defendant was not, as it now argues, excused from engaging in the interactive process because the appropriate accommodation was "obvious." The concept of "obviousness" comes from the appendix to the regulations implementing the ADA. *See EEOC v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 944 (E.D. Tenn. 2017) (citing 29 C.F.R. Pt. 1630 app. § 1630.9. The appendix provides the following illustrative example of "obviousness:" "[f]or example, if an employee who uses a wheelchair requests that his or her desk be placed on blocks to elevate the desktop above the arms of the wheelchair and the employer complies, an appropriate accommodation has been requested, identified, and provided without either the employee or employer being aware of having engaged in any sort of 'reasonable accommodation process.'" 29 C.F.R. Pt. 1630 app. § 1630.9. The situation in this case is wholly distinguishable from the illustrative example in the appendix. This is not, for example, a case where an employee in a wheelchair needs a ramp to access the office building, or an individual with blindness needs a voice reading software. The accommodation in those situations is "obvious." It is not "obvious" that—as in this case—an employee cleared for light duty would need a leave of absence. If any accommodation in this situation is "obvious," it would be providing Mr. Moat with a light duty assignment pursuant to Defendant's light duty work program, which would allow him to provide "valuable services" to Defendant instead of being on leave. (Pl.'s Ex. 16).

Furthermore, to bolster its argument about the "obviousness" of the appropriate accommodation, Defendant again relies on events that occurred *prior* to Mr. Moat's request for light duty, specifically: (1) statements made at the June 9, 2020 Civil Service Commission hearing;

4

and (2) Dr. Aaronson's statements and related testimony regarding Mr. Moat's condition before Dr. Aaronson released him to light duty. (Reply, ECF No. 82, at Page ID # 1983-85). None of these events or documents are relevant to Defendant's utter failure to engage in the interactive process in the fifty-six minutes that elapsed between Plaintiff's request for light duty and Defendant's denial of that request.

### III. Post-June 18, 2020 events are not relevant.

In Sections II and III of its Response, Defendant repackages an argument it previously unsuccessfully made during this litigation: that events that occurred *after* its denial of Mr. Moat's June 18, 2020 request for light duty can somehow cure its failure to engage in the interactive process. Defendant made a similar argument in its Motion for Summary Judgment, which the Court rejected. (ECF No. 32 at Page ID # 1062 ("[T]he question of whether other medical issues that arose *after* [Plaintiff] requested an accommodation for his back injury in June 2020 might have affected his ability to work goes to the quantification of damages rather than to whether the plaintiff can prove a claim based on the defendant's failure to accommodate his disability in June 2020.") (emphasis in original). Accordingly, at trial, the jury was instructed to consider whether "*at the time the request was made*, the employee would have been qualified for the job when he returned to work at the projected time." (ECF No. 60 at Page ID #1218) (emphasis in original).

Despite the Court's repeated rejections of this argument, Defendant advances it again here. The argument fails for the same reasons it has before: because even if Mr. Moat ultimately needed a different accommodation than he originally proposed (*e.g.*, light duty until 2021 rather than until August 2020), Defendant had an ongoing obligation to engage in an interactive process with Mr. Moat when he requested light duty on June 18, 2020. *See* Jury Instructions, Doc. No. 60 at Page ID # 1222; *see also Fisher v. Nissan N. Am., Inc.*, 951 F.3d 419, 421-22 (6th Cir. 2020).

Based on the foregoing, Mr. Moat respectfully requests the Court grant his Motion for judgment as a matter of law or, in the alternative, a new trial.

Respectfully submitted,

**JESSE HARBISON LAW, PLLC**

/s/ Jesse Ford Harbison

Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, TN 37206
(615) 415-3285
jesse@jesseharbisonlaw.com

**STEINER & STEINER, LLC**

/s/ Ann Buntin Steiner by JFH w/ permission

Ann Buntin Steiner, BPR No. 11697
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
asteiner@steinerandsteiner.com

**HUNTER LAW FIRM PLC**

/s/ Anne Bennett Hunter by JFH w/ permission

Anne Bennett Hunter, BPR No. 022407
101 Creekside Crossing, Suite 1700-307
Brentwood, TN 37027
(615) 592-2977
anne@hunteremploymentlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows: J. Brooks Fox, Benjamin Puckett, Department of Law, Metropolitan Courthouse, Suite 108, P.O. Box 196300, Nashville, Tennessee 37219. Parties may access this filing through the Court's electronic filing system.

/s/ Jesse Ford Harbison

Jesse Ford Harbison